**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Richard William Plate,                                   Case No. 3:15CV1699

        Plaintiff

    v.                                                                **ORDER**

Charles Johnson, et al.,

        Defendants

This is a prisoner's civil-rights case under 42 U.S.C. § 1983.

One day in August, 2013, officers of the Toledo Police Department arrested Scott Allyn Plate twice within seven hours, charging him with separate misdemeanors. After the second arrest, authorities booked Plate into the Lucas County Jail.

According to the complaint, a Toledo detective told jail personnel that Plate "suffered from a seizure disorder requiring appropriate medical observation." (Doc. 1 at ¶25).

Less than three hours after Plate entered the jail, staff found him dead in his cell.

Plate's estate brings this suit against defendants Deputy Sheriff Charles Johnson, Sheriff John Tharp, Lucas County, and John Does 1-99. The estate alleges: 1) Johnson was deliberately indifferent to Plate's serious medical needs; and 2) Sheriff Tharp and the County failed to supervise and/or train correctional officers and had a custom or practice of tolerating the officers' indifference to inmates' medical needs.

Pending is defendant Lucas County's motion for judgment on the pleadings. (Doc. 5). For the following reasons, I deny the motion.

**Standard of Review**

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

**Discussion**

The gravamen of the County's motion is that the County is not *sui juris* and not amenable to suit. The County relies on O.R.C. § 301.22, which states that only those counties "adopting a charter or alternative form of government" are "capable of suing and being sued, pleading and being impleaded."

Because state law defines capacity to sue in federal court, *see* Fed. R. Civ. P. 17(b), and because Ohio law provides that counties are incapable of "suing and being sued," the argument goes, Lucas County cannot be a defendant in this case.

In its reply brief, the County acknowledges past cases in which I and other District Judges, including my Toledo colleague, Sr. District Judge David A. Katz, have rejected this very argument. *E.g.*, *Peart v. Seneca Cnty.*, 808 F. Supp. 2d 1028, 1033-34 (N.D. Ohio 2011) (concluding Seneca County was proper defendant in § 1983 case); *Turner v. City of Toledo*, 671 F. Supp. 2d 967, 969-73 (N.D. Ohio 2009) (Katz, J.) (same result as to Lucas County).

But the County contends these cases confused the apple of capacity to sue with the orange of immunity from suit.

Having reviewed my decision in *Peart*, *supra*, and Judge Katz's decision in *Turner*, *supra*, and having familiarized myself with the more recent case law addressing the question, I adhere to the view that the County is amenable to suit in a § 1983 action.

Put most simply, the question of a county's suability is not conceptually distinct from the county's sovereign immunity as a political subdivision of the state.

Under Ohio law, a county is a "political subdivision" of the state. O.R.C. § 2744.01(F); *accord Zents v. Bd. of Comm'rs*, 9 Ohio St. 3d 204, 205 (1984) ("In Ohio, a county is not regarded as a body corporate like a municipality but rather a political subdivision of the state."). Although counties and other "political subdivisions" – municipal corporations, townships, school districts, and the like – are not part of the "State," O.R.C. § 2744.01(I), they are "nevertheless afforded immunity." *Stack v. Karnes*, 750 F. Supp. 2d 892, 895 (S.D. Ohio 2010) (citing O.R.C. § 2743.01(A), (B)).

As a political subdivision entitled, under Ohio law, to sovereign immunity, a county "cannot sue or be sued except as specially authorized by statute." *Smith v. Grady*, 960 F. Supp. 2d 735, 740 (S.D. Ohio 2013) (internal quotation marks omitted); *accord Pancake v. Wakefield*, 102 Ohio App. 5, syll. ¶1 (1956).

One statute authorizing suit is O.R.C. § 301.22, though the authorization extends only to those counties that have adopted a charter or alternative form of government (something Lucas County has not done). But contrary to the County's arguments, this statute does not define the County's capacity (or lack thereof) to sue, or its status as a juridical entity.

Rather, as I and my colleagues in the Northern District and the Southern District have recognized, § 301.22 waives, in limited circumstances, the county's state-granted immunity from

3

suit. *Smith*, *supra*, 960 F. Supp. 2d at 740 ("A second example of where the immunity given to a county has been waived is set forth in Section 301.22."); *Peart*, *supra*, 808 F. Supp. 2d at 1034 (county's "lack of capacity to sue," as defined in O.R.C. § 301.22, "is not conceptually distinct" from county's sovereign immunity); *Stack*, *supra*, 750 F. Supp. 2d at 896 ("In effect, Section 301.22 and 2743.01, collectively, operate to provide immunity to a county so long as [the county] does not adopt a charter or an alternative form of government.").

As Judge Katz has persuasively explained, § 301.22 "merely purports to set out the circumstances in which a county is deemed to have waived its common law immunity, codifying [the principle that] a county that adopts a separate form of government can no longer claim immunity as a mere instrumentality of the State of Ohio." *Turner*, *supra*, 671 F. Supp. 2d at 971 n.2.

After surveying Ohio case law, Judge Katz continued:

> the Ohio cases holding that a county cannot be sued have reasoned that "[c]ounties are local subdivisions of a State, created by the sovereign power of the State, of its own sovereign will," as opposed to "municipal corporations," which are not "superimposed by a sovereign and paramount authority." The essential logic of these venerable cases is that the State of Ohio decided, on its own sovereign initiative, to divide its territory into county units, while there was no analogous central planning regarding the creation of Ohio cities and other municipal entities . . . It is thus apparent that, even under Ohio law, the question of a governmental entity's suability is not conceptually distinct from the question of the entity's sovereign immunity as an arm of the state.

*Id.* at 971 (internal quotation marks and citations omitted).

The foregoing authorities establish that, far from defining "capacity" to sue, as Rule 17 uses that term, § 301.22 constitutes a waiver of a county's immunity from suit. It therefore provides no support for the County's claim it is not amenable, on lack-of-capacity grounds, to suit in federal court.

Moreover, the immunity that § 301.22 waives is only immunity from suit under Ohio law.

4

Ohio is, of course, "free to define and set forth the ability of political subdivisions, like [Lucas] County, to retain and ultimately waive immunity *under state law*." *Stack*, *supra*, 750 F. Supp. 2d at 897 (emphasis in original).

But it is the Eleventh Amendment, and not § 301.22, that defines whether a governmental entity is entitled to immunity from suit in federal court. *See Smith*, 960 F. Supp. 2d at 743; *Peart*, *supra*, 808 F. Supp. 2d at 1034; *Stack*, 750 F. Supp. 2d at 896-99; *Turner*, 671 F. Supp. 2d at 972-73. And the Supreme Court "has consistently refused to apply Eleventh Amendment protection to counties because they are not arms of the state." *Stack*, *supra*, 750 F. Supp. 2d at 896; *accord S.J. v. Hamilton Cnty., Ohio*, 374 F.3d 416, 420 (6th Cir. 2004) ("Ohio counties lack sovereign immunity" under Eleventh Amendment).

For these reasons, Lucas County is not immune, whether under state or federal law, from suit in a § 1983 case.

Moreover, even assuming I am wrong that O.R.C. § 301.22 goes to immunity rather than capacity, "a county may be liable" for an unconstitutional custom or policy in a § 1983 suit "even though it is not *sui juris* under Ohio law." *Black v. Hamilton Cnty. Pub. Def. Comm'n*, 2013 WL 684394, *4 (S.D. Ohio).

As Judge Frost of the Southern District of Ohio has explained:

> The fact that Ohio counties, absent application of Section 301.22, are not "bodies politic and corporate" for *purposes of Ohio law* is not the appropriate inquiry. Rather, the meaning of "person" for purposes of § 1983 focuses on the intent of Congress, not that of the individual states. The congressional intent shows that the meaning of "person" for purposes of § 1983 includes "bodies politic and corporate," *which included municipalities, counties, and other local governments at the time of drafting the Civil Rights Act*."

*Stack*, *supra*, 750 F. Supp. 2d at 898 (emphasis in original; internal citations omitted).

5

In short, "an Ohio county, as a political subdivision, [i]s not an arm of the state, [i]s not entitled to Eleventh Amendment immunity in federal court, and [i]s precluding from claiming protection from suit in federal court on grounds of lack of capacity under Section 301.22 of the Ohio Revised Code." *Smith*, *supra*, 960 F. Supp. 2d at 743.

Rather, it is a "person" for purposes of § 1983 litigation and a proper defendant in this case.[1]

## Conclusion

It is, therefore,

ORDERED THAT: Lucas County's motion for judgment on the pleadings (Doc. 5) be, and the same hereby is, denied.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

---

[1] As the County acknowledges, its Commissioners are not immune from suit and thus they, had the estate named them, would be proper defendants in this case.